## WELLS FARGO & CO. v. POTTER.

(Circuit Court of Appeals, Third Circuit. June 13, 1911.)

### No. 2.

1. CARRIERS (§ 230*) — ACTION FOR INJURY TO LIVE STOCK — QUESTIONS FOR JURY.

In an action for an injury to plaintiff's horses while being transported by defendant, where there was evidence that after they were placed in the car plaintiff's superintendent called the attention of defendant's agent to the insufficiency of the partitions in the car and requested that they be strengthened, which was refused, and that the horses were injured by reason of the insufficiency of such partitions, although contradicted,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

made a case requiring the submission of the question of defendant's negligence to the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 962; Dec. Dig. § 230.*]

2. CARRIERS (§ 230*)—ACTION FOR INJURY TO LIVE STOCK — QUESTIONS FOR JURY.

Evidence that the horses became frightened while passing through a tunnel, and broke down the partitions, that plaintiff's servants assisted in placing them in the car and accompanied them, and that they had lanterns which they might have lighted when the tunnel was reached, was not sufficient to establish contributory negligence as matter of law.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 962; Dec. Dig. § 230.*]

3. CARRIERS (§§ 207, 230*)—CARRIAGE OF LIVE STOCK—CONTRACT—LIMITATION OF LIABILITY.

Evidence that plaintiff and defendant's superintendent made an oral agreement by which defendant was to furnish a car of a certain kind at a stated time and place for the transportation of a number of horses, the rate also being agreed on, was sufficient prima facie to establish a completed contract, and, where defendant's agent obtained the signature of plaintiff's agent in charge of the horses when loaded to a written contract which limited the defendant's liability, it was not error for the court to instruct the jury, in an action for injuries to the horses, that if they found that the oral contract was made as testified to without any agreement for limited liability, or for any further agreement, plaintiff would not be bound by the written contract unless he ratified it, or his agent had actual authority to make it.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. §§ 207, 230.*]

In Error to the Circuit Court of the United States for the District of New Jersey.

Action at law by Robert H. McCarter Potter against Wells Fargo & Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Collins & Corbin (Gilbert Collins, W. W. Green, George S. Hobart, of counsel), for plaintiff in error.

Joseph Coult, Jr., for defendant in error.

Before BUFFINGTON and LANNING, Circuit Judges, and YOUNG, District Judge.

YOUNG, District Judge. The defendant in error, plaintiff below, brought an action in tort against the plaintiff in error, defendant below, to recover damages for alleged injuries to plaintiff's horses, which the defendant had undertaken to carry from Andover Junction, in the state of New Jersey, to Sheepshead Bay, in the state of New York. It appears from the record that the plaintiff, prior to August 29, 1904, arranged with Mr. Crowe, superintendent of defendant at Jersey City, for a car in which to ship a certain number of horses, and that during the negotiations the rates and place and time of shipment were fixed.

On August 29, 1904, the plaintiff delivered 20 horses to the defendant at Andover Junction, and the same were received by the defendant and placed in a car provided. It appears that the plaintiff was at the car when the loading began, but left before it was completed; he

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

taking a train for New York. After the horses were placed in the car; but before the train started on its journey, O'Neill, agent for the defendant, presented to Claxton, superintendent for plaintiff, a written contract which was signed by both, and which contained a clause limiting the liability of defendant in case of injury to $75 for each horse carried, and also providing against liability in the event of the injury arising from the action of the animals themselves.

During the transportation of the horses from Andover Junction to Sheepshead Bay, two of the horses were injured, as claimed by plaintiff, by the negligence of defendant company's employés in not having provided proper and sufficient partitions between the horses injured, and, as claimed by defendant, by the contributory negligence of plaintiff's employés in not properly attending the horses while passing through a certain tunnel whereby the horses became frightened and broke down the partition provided. It was further asserted by defendant that the injury to the horses resulted from the actions of the animals themselves.

The case was submitted to the jury by the trial judge with instructions that the jury were to find whether or not the defendant had been guilty of negligence which was the proximate cause of the injury. He also submitted to the jury whether or not there was a complete oral contract made before the written contract was signed by Claxton. The jury was also instructed that, if there was not a complete oral contract arising out of the negotiations between plaintiff and Crowe prior to August 29th, then these negotiations were but preliminary to the making of a written contract, and Claxton, by virtue of being in charge of the horses for shipment, had apparent authority to sign the written contract, and it would be binding upon the plaintiff, and he could only recover for the injury to the amount stipulated in the written contract; but that, if there was a complete oral contract made by plaintiff, then the doctrine of apparent authority would not apply, but the jury must be satisfied by the evidence that either the plaintiff himself sanctioned the making of the new contract or authorized Claxton to do so for him. The jury found a verdict for plaintiff in the sum of $3,500 and added that they based their verdict upon the oral contract.

Counsel for defendant filed numerous assignments of error based upon the admission and rejection of evidence. These it is not necessary to consider in detail, because none of them are well founded or would be sufficient to call for a reversal of the case. The other assignments of error may be considered under three propositions: First, did the court err in submitting the case to the jury upon the question of negligence? Second, did the court err in refusing to direct the jury to render a verdict for defendant because of contributory negligence on the part of plaintiff's servants? Third, did the court err in instructing the jury that, if there was a complete oral contract, the plaintiff was entitled to recover the amount of damage proved by him, unless they found that (a) either the plaintiff had sanctioned the written contract made by Claxton as his agent, or (b) that Claxton

was his agent and was authorized to make a new contract in writing differing from the oral contract.

[1] First, as to the negligence of the defendant: The evidence on the part of the plaintiff was that on the morning of August 29, 1904, the horses were taken by the plaintiff's servants to the car at Andover junction and placed in the car, defendant's agent O'Neill and other employés of defendant being there at the time, and that the attention of O'Neill was called by Claxton, plaintiff's superintendent, to the fact that one of the horses, the Diamond Jubilee colt, was a most valuable horse, and that the arrangements for its safe carriage were insufficient, specifying wherein they were insufficient, and suggesting the remedy by the procuring of additional boards to place in the partition between the horses, but that O'Neill refused to wait for the boards and informed plaintiff's superintendent that he was in charge of the shipment and that he would guarantee their safety. This evidence was corroborated by other of plaintiff's servants. The defendant's witness O'Neill contradicted this evidence; but there was no corroboration of his testimony. The plaintiff then having offered to show that the injury to the horses was caused by the insufficiency of the partition to keep the horses separated, whereby they were cut and bruised when they became frightened in the tunnel through which the train passed, this evidence, together with the evidence as to the insufficiency of the partition, made out a case to go to the jury, and the court would have erred in not submitting it to them. The evidence of the plaintiff, if believed, shows a clear case of negligence on the part of the defendant and warranted the jury in so finding.

[2] Second, as to the contributory negligence of the plaintiff: The only evidence tending to show contributory negligence was that the horses were placed in the car by plaintiff's servants, that they accompanied them on their journey, and that they were provided with lanterns which they should have lighted and had in the car so that the horses in passing from the light of day into the tunnel would not be in the dark and frightened. It would have been plain error for the court to have directed a verdict for the defendant upon this evidence. It is true the plaintiff's servants placed the horses in the car; but the evidence clearly warrants the finding that O'Neill, the agent of the defendant, was supervising their placement, and that the proximate cause of the injury was not the manner in which they were placed in the car, but was the insufficiency of the means used to secure their separation in case of fright or otherwise, after the attention of O'Neill was called to the insufficiency of the means used. True it is, also, that the plaintiff's servants accompanied the horses and had lanterns; but there was no such conclusive evidence that the injury was caused by any negligence of the plaintiff's servants, either in their attendance or failure to use the lanterns, as to justify the court in directing a verdict for defendant.

There was scarcely more than a scintilla of evidence of the contributory negligence of plaintiff's servants, and it well may be doubted if a verdict for defendant could have been sustained upon that evidence.

[3] Third, as to the contracts: The evidence of the plaintiff, if believed by the jury, shows that, prior to the date of shipment, the plaintiff and Mr. Crowe, superintendent for the defendant, met, and that it was arranged between them that defendant was to provide a certain kind of car for the transportation of a certain number of horses, that the rates were fixed at a certain sum, and that the car was to be at a certain place at a certain time for the loading of the horses. Nothing remained to be done in the making of a contract so far as plaintiff was concerned and nothing so far as defendant was concerned, except to reduce it to writing and limit the liability. None of these things were necessary for an oral contract. It was just as binding as a written one, and the limitation of liability was a matter which, if defendant desired, it was its privilege to have mentioned. The evidence was conflicting whether or not the understanding was that the contract should be reduced to writing and whether or not the limited liability was mentioned. Crowe said not only was the contract not completed, but that it was only a preliminary talk as to rates and the time of shipment, and that he told plaintiff there would be a limited liability. Plaintiff denied this, and the evidence was clearly for the jury. There was sufficient evidence of a complete oral contract, and the court did not err in submitting it to the jury.

Neither did the court err in instructing the jury that, if the oral contract was not complete, then Claxton, who was plaintiff's superintendent and in charge of the horses about to be shipped, had apparent authority to make the written contract. This was as favorable a presentation of the case as the defendant was entitled to have.

Nor was there error in the trial judge's instructions that if there was a complete oral contract, yet if plaintiff sanctioned the making of a contract in writing thereafter which varied the oral contract, or if Claxton had authority to change the oral contract by the written one, then the plaintiff could not recover more than the limited liability therein mentioned. This presentation to the jury was quite as favorable as the defendant was entitled to have.

A careful reading of the charge convinces us that there was no error in it, and that the case was fairly left to the jury under careful and adequate instructions. The verdict was not excessive. The evidence as to the value of the horses and the extent of the injury might well have justified a much larger verdict.

The judgment is affirmed.